IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TIMOTHY LEE TAYLOR, JR.,

        Plaintiff,

v.                            CIVIL ACTION NO.   2:21-cv-00325

CITY OF DUNBAR, et. al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion for Summary Judgment* (Document 23), the *Defendants' Memorandum in Support of Motion for Summary Judgment* (Document 24), the *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment* (Document 27), and the *Defendants' Reply in Support of Motion for Summary Judgment* (Document 29), together with all attached exhibits.  For the reasons stated herein, the Court finds that the motion should be denied.

**FACTS**

The Plaintiff, Timothy Lee Taylor, Jr., brought this claim against the City of Dunbar, Officer Shafer, Officer Arthur, Officer Barker, and Officer Lester in a *Complaint* (Document 1-1) filed *pro se* in the Circuit Court of Kanawha County, West Virginia, on April 30, 2021.  The Defendants removed the action on June 4, 2021.  On August 31, 2021, the Court granted a motion to dismiss in part, leaving only a claim of excessive force in violation of 42 U.S.C. § 1983 against Officers Barker and Lester.  (Document 14.)

1

The claims arise from an incident that occurred on May 1, 2019. Mr. Taylor and his girlfriend were at Ollies Discount Store in Dunbar, West Virginia, when they were accosted by Mike Nelson. Mr. Taylor's girlfriend had previously dated Mr. Nelson, and in 2017, Mr. Taylor shot Mr. Nelson when he broke into her home. On May 1, 2019, when Mr. Nelson saw Mr. Taylor and his girlfriend at Ollies, Mr. Nelson began threatening him and trying to fight with him. Mr. Nelson paced around the front of the store, near the entrance/exit doors, behaving erratically. The store manager called the police.

Officer Barker arrived on the scene, and Mr. Nelson told him that Mr. Taylor had shot him before and had a gun, although Mr. Taylor was unarmed. Mr. Taylor left the store through a rear exit and jogged toward his vehicle as Officer Barker spoke with Mr. Nelson near the front of the store. He got into the vehicle as Officer Barker and Mr. Nelson began walking across the parking lot toward his vehicle. Mr. Taylor testified that he did not see the officer and was afraid for his safety because he believed Mr. Nelson had a gun.[1]

Surveillance video shows Mr. Taylor pulling forward out of the parking spot and turning left, toward the front of the Ollie's. (Ollie's parking lot video at 19:40, att'd as Def.'s Ex. 3.) He then turned left again to go down the aisle in the parking lot, rather than either exiting or stopping near the entrance to pick up his girlfriend, who remained in the store. Officer Barker and Mr. Nelson were in the aisle near the space Mr. Taylor had pulled out of, and Mr. Taylor swerved left into that space, appearing to accelerate in the direction of Officer Barker and Mr. Nelson. (*Id.* at

---

1 Officer Barker's police report indicates that Mr. Taylor's car window was open, and he believes it is impossible that Mr. Taylor did not see or hear him directing him to stop. Mr. Taylor stated that he got into his car, closed the windows, and locked the door, and never saw or heard the officer. For purpose of summary judgment, factual disputes are resolved in favor of the Plaintiff as the non-moving party, and the Court has recounted the facts in that light.

2

19:50.) The video does not clearly show whether the vehicle made contact with either man. Officer Barker's report indicates that he pushed Mr. Nelson out of the way and the vehicle hit him in the side. Officer Barker ran toward the vehicle, but Mr. Taylor exited the parking lot without stopping. Mr. Taylor testified that he started to pull toward the front of the store to pick up his girlfriend but decided to leave the scene instead when he saw a police vehicle, which reassured him that she would be safe in the store. He also testified that Mr. Nelson jumped or lunged toward his vehicle, and he swerved away to get away from him.[2]

Officer Barker informed Officer Lester, who was nearby, that Mr. Taylor had attempted to run him and Mr. Nelson over, and Officer Lester pursued Mr. Taylor in his vehicle. Officer Barker returned to his police vehicle to assist in the apprehension of Mr. Taylor. Mr. Taylor noted a police officer in the Ollie's lot as he was leaving but did not stop at that time. Officer Lester activated his lights, and Mr. Taylor stopped behind a motel. He lowered his window and put his arms out to show cooperation. Officer Barker arrived while Mr. Taylor was still in the vehicle. The officers ordered him to exit the vehicle, but he had difficulty with the lock and did not immediately exit. The officers ran up to the vehicle and pulled him out. Mr. Taylor testified that Officer "Barker came up from behind, punched me on the right side of the face, slammed me on the ground, kind of like on my shoulder, and stood on my head with his knee, put like all of his body weight on my head." (Taylor Depo. at 54::7–11, att'd as Pl.'s Ex. 1) (Document 27-1.) He "did a little wiggle with [his] arms still back to try to show them that [he] wasn't trying to get loose" then said, "Get the F off of my head." (*Id.* at 54::14–17.) He was handcuffed, placed in

---

2 The movements depicted in the video are as described above. Mr. Nelson and Officer Barker were standing near the row of parked cars beside the space where Mr. Taylor had been parked, and Mr. Taylor's vehicle swerved out of the driving aisle in their direction.

3

a squad car, and taken to the Dunbar police station, where he was charged with attempted first-degree murder. He believes the attempted murder charge was brought in retaliation for an unrelated lawsuit his parents were pursuing. He was not indicted within the next year and a day, so the charges were dropped.

Immediately after his arrest, Mr. Taylor had a laceration to his face where it was pressed into the concrete. He continues to suffer severe headaches as a result of the head injury from the pressure of Officer Barker placing his weight on his head. While he was in the jail following his arrest, he was assaulted by other inmates and had a couple of knots on his head, which healed in about a week. He also had a staph infection while in jail.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

**DISCUSSION**

The Defendants argue that they are entitled to qualified immunity and therefore, summary judgment, as to the claims of excessive force. They contend that at the time of the arrest, Mr. Taylor had committed a felony by trying to hit Officer Barker and Mr. Nelson with a car, and Officer Barker had reason to believe he had a firearm. They argue that Mr. Taylor "has failed to produce any evidence of any injury, much less a severe injury." (Def.'s Mem. at 9.) They cite their expert's findings that they used reasonable force, given Mr. Taylor's vehicular assault, flight, and resistance. In their view, "the use of non-deadly, but firm force, to neutralize the perceived threat and flight risk of Plaintiff was a reasonable response." (*Id.* at 12.) They further argue that there was no violation of clearly established law.

The Plaintiff argues that he was fully compliant and showing his hands when Officer Barker punched him in the face, both officers slammed him to the ground, and Officer Barker placed his body weight on his head. At the time of the use of force, he contends that he posed no threat and was not trying to evade or resist arrest. Because he has presented evidence that the force used was more than reasonably necessary to accomplish the arrest, he contends that qualified immunity is inappropriate. He concedes that the officers believed he was the aggressor at Ollie's and fled the scene after attempting to hit Officer Barker with his vehicle. However, he posed no immediate threat at the time Officer Barker punched him and knelt on his head, and he was not actively fleeing or resisting.

The Fourth Amendment provides a right to be free from unreasonable seizures, including the use of excessive force. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out

6

of their performance of job-related duties. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.) The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted). Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[3] *Id.* "The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). The reasonableness analysis is objective. Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he

---

3 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

The Fourth Circuit has also explained, in the context of a qualified immunity defense to excessive force allegations, that "the objective reasonableness of force [should be viewed] in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Rowland*, 41 F.3d at 173–174 (summarizing the facts in that case to state that "it is impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill," where an officer pursued and tackled a man who had picked up and failed to return a five dollar bill dropped by a woman at a bus station, after the officer ordered him to return the money). Rather than examining a single aspect of an incident in isolation, courts are to evaluate the objective reasonableness based on the totality of circumstances. *Id.*[4] Factors to consider in excessive force cases include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Mr. Taylor has presented evidence, in the form of his own testimony, that he pulled over and showed his hands when Officer Lester stopped him and continued to show his hands as both officers approached. He had difficulty getting out of his vehicle but offered no other resistance or noncompliance. The officers reasonably believed he had attempted to run Officer Barker and Mr. Nelson over with his vehicle and suspected he was armed. Removing him from the vehicle

---

4 The Fourth Circuit has clarified that not viewing events in isolation means that "the events should [not] be reviewed outside the context of the conduct that precipitated the seizure." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). However, "the reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds," and when the justification for a use of force is eliminated, the use of force must cease. *Id.*

and restraining him was reasonable under those circumstances. Accepting his testimony that he was showing his hands and was not resisting, punching him, and kneeling on his head was not. The Defendants cite Officer Barker's police report, which makes no mention of punching Mr. Taylor or kneeling on his head. They also cite their expert report—but that report presumes Officer Barker's account is accurate and therefore does not address whether punching a non-resisting suspect and kneeling on his head is a reasonable use of force if that suspect recently attempted to run over an officer and a third party. In considering a motion for summary judgment, the Court must resolve factual disputes and draw reasonable inferences in favor of the Plaintiff, as the non-moving party.

Although the first *Graham* factor, the seriousness of the suspected offense, weighs in favor of the officers, the second two factors favor the Plaintiff. From the officers' perspective, Mr. Taylor had used his vehicle as a weapon, and the amount of force necessary to remove him from the vehicle was reasonable. At the time of the use of force, accepting Mr. Taylor's account of events as accurate, he was showing his hands and complying with the officers. He had pulled over voluntarily. When he could not promptly unlock his door, he communicated that to the officers. Officer Barker punched him when he was offering no resistance and not attempting to flee. He then placed his full body weight on Mr. Taylor's head, pressing his face into the concrete. The Fourth Circuit has repeatedly held that a suspect pulling away from forceful restraint does not, in itself, justify escalating with more force. *Smith v. Ray*, 781 F.3d 95, 103 (4th Cir. 2015); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). Mr. Taylor has not presented extensive medical evidence, but he testified that he had a laceration on his face and has suffered severe headaches since his arrest. The Fourth Circuit has found that there is "no support" for the

9

"contention that suffering only de minimis injuries bars one from asserting a Fourth Amendment excessive force claim." *Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015) (unpublished).[5] Thus, the Court finds that, resolving factual disputes in favor of the Plaintiff, he has met his burden of establishing that the Defendants violated his right to be free from the use of excessive force.

The Court further finds that the constitutional right at issue is well-established. Courts have applied the *Graham* factors to numerous cases involving a variety of specific factual scenarios. The Fourth Circuit has emphasized that "the reasonableness of an officer's actions is determined based on the information possessed by the officer at the moment that force is employed," and "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). In *Thomas v. Holly*, the Fourth Circuit addressed a case in which a plaintiff was suspected of a relatively serious offense, but the remaining *Graham* factors favored him with respect to two officers who punched him after he was on the ground and restrained by other officers. *Thomas v. Holly*, 533 F. App'x 208, 217–19 (4th Cir. 2013). Similarly, in *Meyers v. Baltimore County*, the Fourth Circuit found that continued use of a taser after the plaintiff was secured and no longer posed a threat constituted the type of "unnecessary, gratuitous, and disproportionate force" that violates the constitution, and that the violation was clearly established even absent a previous case considering exactly the same facts. *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 733–35 (4th Cir. 2013).

Even in those cases, which involved more direct combat between the plaintiffs and the officers, at the point the plaintiffs no longer posed a threat, the court held that the officers could

---

5 Of course, the extent of the injuries impacts the potential damages available to the Plaintiff should he prevail.

no longer use force. It is clearly established that force cannot be justified when a suspect is not resisting or fleeing and poses no threat to the officers or the public. *See Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016) (holding that precedent was sufficient to place officers on notice that tasing a "nonviolent misdemeanant who presented no threat to the safety of the officer or the public and who was compliant and not actively resisting arrest or fleeing," although the prior cases involved secured suspects and the plaintiff in *Yates* was not physically secured). Mr. Taylor was suspected of hitting or attempting to hit an officer and a third party with his vehicle but was compliant when he was stopped a few moments later, making no attempt to resist, flee, or threaten the officers. Thus, the Court finds that the Defendants have not met their burden, at summary judgment, of establishing that the right at issue was not clearly established. A jury crediting Mr. Taylor's testimony could find that Officers Barker and Lester violated his clearly established right to be free from the use of excessive force. Therefore, the Court finds that the motion for summary judgment should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion for Summary Judgment* (Document 23) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 27, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

11